# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### CASE NO. 1:25-cv-00406-MR

ROBERT LEE PRICE,       )
                           )

        Petitioner,       )

                           )      **MEMORANDUM OF**

vs.                      )    **DECISION AND ORDER**

                           )

LESLIE COOLEY DISMUKES,   )
Secretary, North Carolina       )
Department of Adult Correction,  )

                           )

        Respondent.     )
_____)

**THIS MATTER** is before the Court upon further review of the pro se

Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2254, by

Robert Lee Price, (herein "Petitioner") on November 17, 2025. [Doc. 1]. Also

before the Court is the Petitioner's renewed Motion to Proceed *In Forma*

*Pauperis*. [Doc. 5].

## I.    PROCEDURAL BACKGROUND

The Petitioner is a prisoner of the State of North Carolina. [Doc. 1 at

1]. The Petitioner was convicted by a jury on April 14, 2022, of one count of

sale or delivery of methamphetamine in Cleveland County Superior Court.

[Id.]. Following this conviction, the Petitioner pleaded guilty to having attained

habitual felon status. [Id.]. The Petitioner received an active term of

imprisonment of 110 to 144 months. [Id.]. According to the North Carolina Department of Adult Correction website,[1] the Petitioner's projected release date from imprisonment is November 19, 2030.

After sustaining his state court convictions, the Petitioner filed no direct appeal. As for post-conviction proceedings, the Petitioner filed a petition for writ of certiorari in the North Carolina Court of Appeals on February 27, 2023, which the appellate court granted, in lieu of a direct appeal,[2] to review the Petitioner's conviction and sentence. State v. Price, No. COA22-1064, Docket Sheet (N.C. App., Feb. 27, 2023). Ultimately, the appellate court concluded, in an unpublished opinion filed September 12, 2023, that the Petitioner received a fair trial, free from error. Price, No. COA22-1064, slip op. at 2 (N.C. App. 2023). Thereafter, on October 16, 2023, the Petitioner thereafter filed both a notice of appeal regarding a constitutional question and a petition for discretionary review in the North Carolina Supreme Court. That court dismissed the notice of appeal and denied the petition for discretionary review on August 21, 2024. [Doc. 1 at 2]; State v. Price, No.

---

[1] See https://webapps.doc.state.nc.us/opi/viewoffender.do?method=view&offenderID= 0330792&searchOffenderId=0330792&searchDOBRange=0&listurl=pagelistoffendersea rchresults&listpage=1(herein "NCDAC Database"); Fed. R. Evid. 201.

[2] "The writ of certiorari may be issued in appropriate circumstances by either appellate court to permit review of the judgments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action[.]" N.C. R. App. P. 21(a)(1).

2

274P23, Docket Sheet (N.C. 2024). The Petitioner did not seek further review by filing a petition for writ of certiorari in the U.S. Supreme Court. [Doc. 1 at 2].

## II. FACTUAL BACKGROUND

The facts underlying the Petitioner's state court judgment are not in dispute and are summarized below by the North Carolina Court of Appeals.

At the behest of narcotics investigators with the Cleveland County Sheriff's Office, a confidential informant purchased approximately 3.5 grams of methamphetamine from [Petitioner] on 8 January 2020. As part of a controlled buy, investigators equipped the informant with an audio and video recorder disguised as a cell phone and gave him a $100.00 bill with which to purchase the methamphetamine from [Petitioner]. The informant then traveled to [Petitioner]'s residence while investigators "followed directly behind him." Upon the informant's arrival, investigators "parked at a nearby residence where [they] could conduct some surveillance of the controlled buy." The investigators observed [Petitioner] "walking towards [the informant's] vehicle." The informant testified that [Petitioner] handed him a clear plastic bag containing an "8 ball of methamphetamine" through the car window. The informant then "gave [Petitioner] the money, and . . . left and went back and met" with the investigators.

The next day, officers visited [Petitioner]'s residence and [Petitioner] consented to a search of his bedroom. During the search, officers discovered the $100.00 bill used in the controlled buy. Investigators also found paraphernalia for smoking methamphetamine, plastic bags with residual amounts of a white crystal-like substance, and a plastic straw "cut at a 45-degree angle, which is commonly used . . . to scoop narcotics from a bag[.]"

\* \* \* \* \* \* \* \* \* \* \*

3

At trial, the State offered the testimony of Miguel Cruz-Quinones, a "forensic scientist and a Special Agent with the North Carolina State Crime Laboratory." The State tendered Special Agent Cruz-Quinones as "an expert in the field of forensic chemistry for the purposes of determining controlled substances." Special Agent Cruz-Quinones testified that he was "a substitute witness" for "the analyst of the evidence in this case[,]" so he had to "review the case file completely this morning and her data and all her notes." [Petitioner] did not object to the trial court's acceptance of Special Agent Cruz-Quinones as an expert witness or to the admission of his testimony.

Price, No. COA22-1064, slip op. at 2-3.

In his § 2254 petition filed herein, the Petitioner raises one constitutional claim: whether the state trial court violated his Sixth Amendment Confrontation Clause rights by permitting the state's "substitute witness" to identify and explain the drug at issue even though such witness was not the scientific analyst who conducted all the testing of the substance recovered from the controlled buy. [Doc. 1 at 5].

The Petitioner contends that the state trial court committed a Sixth Amendment violation and that this Court should review his state judgment to prevent the fundamental miscarriage of justice. [Doc. 4 at 2]. Following such review, the Petitioner asserts the Court should issue its writ, the Petitioner's "conviction should be vacated[, and his case] remanded for a new trial"

4

consistent with the resolution of a similar state criminal matter, <u>State v. Clark</u>, 296 N.C. App. 718, 909 S.E.2d 566 (2024).[3]  [Doc. 1 at 14].

## III.    STANDARD OF REVIEW

In reviewing a § 2254 petition, the Court is guided by Rule 4 of the Rules Governing Section 2254 Cases, which directs the district court to dismiss a petition when it plainly appears from the petition and any exhibits that the petitioner is entitled to no relief.  Rule 4, 28 U.S.C.A. foll. § 2254. In a case such as the present one, the Court must consider the requirements of 28 U.S.C. § 2254(d).  That section of the AEDPA applies to a person in custody under a state-court judgment who seeks a determination that the state court's adjudication of his federal claim violates the Constitution, laws, or treaties of the United States.  Specifically, a federal court may not grant relief as to any claim "adjudicated on the merits" in state court unless the state court's resolution of such claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[3] The North Carolina Court of Appeals' decision in <u>Clark</u> may not be the last word on the Confrontation Clause issue resolved therein.  The North Carolina Supreme Court granted the state's motion to stay that decision as well as the state's petition for discretionary review and petition for writ of supersedeas.  <u>State v. Clark</u>, No. 323PA24, Docket Sheet (N.C. Dec. 10, 2025).  As of the date of this Order, those matters remain pending.

      (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision constitutes an unreasonable application of clearly established federal law under § 2254(d)(1) when the state court correctly identifies the "governing legal principle . . . but unreasonably applies that principle to the facts of the . . . case." Barnes v. Joyner, 751 F.3d 229, 238 (4th Cir. 2014) (citation omitted). To find an "unreasonable application of federal law" requires a "substantially higher threshold" to overcome. Schiro v. Landrigan, 550 U.S. 465, 473 (2007). In making this assessment, the habeas court looks "to whether the state court's application of law was objectively unreasonable and not simply whether the state court applied the law incorrectly." Barnes, 751 F.3d at 238-39 (citation omitted).

For a state court's factual determination to be held unreasonable under § 2254(d)(2), "[the determination] must be more than merely incorrect or erroneous." Williams v. Stirling, 914 F.3d 302, 312 (4th Cir. 2019) (citation omitted). The state court's finding must be "sufficiently against the weight of the evidence that it is objectively unreasonable." Id. (citation omitted). The AEDPA also provides that "a determination of a factual issue made by a State court shall be presumed to be correct" absent "clear and convincing

6

evidence" to the contrary.  28 U.S.C. § 2254(e)(1).  These provisions of the AEDPA, "operating in tandem," require that a petitioner seeking relief under § 2254(d)(2) establish that the state court's factual finding was "incorrect by clear and convincing evidence, and that the corresponding factual determination was objectively unreasonable in light of the record before the court."  Merzbacher v. Shearin, 706 F.3d 356, 364 (4th Cir. 2013) (quoting Miller-El v. Cockrell, 537 U.S. 322, 348 (2003) (internal quotation marks omitted)).

In sum, a federal court "shall not" grant a writ of habeas corpus unless the earlier decision took an "unreasonable" view of the facts or law. 28 U.S.C. § 2254(d). By design, this "standard is difficult to meet." Harrington v. Richter, 562 U.S. 86, 102 (2011). The term "unreasonable" refers not to "ordinary error," plain error, or even to circumstances where the petitioner offers "a strong case for relief," but rather to "extreme malfunctions in the state criminal justice syste[m]." Id. (internal citation omitted).  The critical question is whether the state court "managed to blunder so badly that *every* fairminded jurist would disagree" with its outcome.  Mays v. Hines, 141 S. Ct. 1145, 1149 (2021) (emphasis added).

## IV.    DISCUSSION

A threshold question is whether the Petitioner's claim is barred by the statute of limitations.  28 U.S.C. § 2244.  The time between the last date on which the Petitioner could file his notice of appeal to the date he filed his petition for certiorari (Rule 21(a) motion), taken together with the time between the decision of the North Carolina courts to the filing of this present action exceeds the one year permitted by § 2244.  However, <u>Jimenez v. Quarterman</u>, 555 U.S. 113 (2009), allows for the revival of a lapsed appeal to relate back.[4]  This would eliminate from the equation the period before the Petitioner's filing of his motion for certiorari, so long as that Rule 21(a) motion "revived" an appeal that was initiated by a premature notice of appeal and therefore ineffective.  Stated another way, if the Petitioner's Rule 21 motion was in the nature of an MAR, then this action was filed beyond the statute of limitations.  If, on the other hand, the Petitioner's Rule 21(a) motion was in the nature of a notice of appeal, then <u>Jimenez</u> saves the Petitioner from dismissal.  Thankfully, for the reasons stated <u>infra</u>, the Court need not decide this sticky issue.

---

[4] The Court in its prior Order [Doc. 3] directed the Petitioner to explain why his petition should not be dismissed as untimely.  [<u>Id.</u> at 5].  The Petitioner responded with a lengthy filing, largely rearguing his claim [Docs. 4, 4-1, 4-2], but not citing to <u>Jimenez</u>.  Giving the Petitioner the benefit of the doubt, the Court takes the Petitioner's wandering arguments as enveloping the <u>Jimenez</u> issue.  However, it is all beside the point.  On the merits, the Petitioner is not entitled to relief as set forth herein.

The Petitioner asserts that his Confrontation Clause claim is identical to that found in <u>Smith v. Arizona</u>, 602 U.S. 779 (2024), wherein the U.S. Supreme Court held that the testimony of such "substitute expert" violated the Constitution. The Petitioner, however, never raised an objection during his trial to the state calling the substitute expert chemical analyst witness, nor to his testimony. Accordingly, the Petitioner did not preserve the claim for review. The state appellate court, therefore, engaged in plain error review as an alternative basis for upholding the Petitioner's convictions.

To succeed under this analysis, the Petitioner had to show "not only that there was error, but that absent the error, the jury probably would have reached a different result." <u>Price</u>, No. COA22-1064, slip op. at 6 (citation omitted). The appellate court concluded that, even excluding the substitute expert's testimony, the jury probably would not have acquitted the Petitioner:

> Here, the State produced ample evidence beyond Special Agent Cruz-Quinones's opinion testimony that the white crystal-like substance that [Petitioner] sold to the informant in the controlled buy was methamphetamine. This evidence included the testimony of the two investigators who found "meth-amphetamine smoking devices" in [Petitioner]'s residence; the testimony of one of the investigators identifying a cut-off plastic straw "commonly used . . . to scoop narcotics from a bag into the devices" and describing plastic bags with "residual amounts of a white crystal-like substance" which were discovered in [Petitioner]'s home; and the testimony of the informant, who identified the substance as methamphetamine three times.

9

<u>Price</u>, No. COA22-1064, slip op. at 11.  The state appellate court's factual and legal conclusions are not objectively unreasonable.  More importantly, the Court of Appeals rejected the Petitioner's claim on a basis separate and distinct from his present Confrontation Clause claim.

The U.S. Supreme Court decided <u>Smith</u> after the North Carolina Court of Appeals denied the Petitioner relief.  The Petitioner then supplemented his argument in order to submit it to the North Carolina Supreme Court based on the <u>Smith</u> decision.  Thereafter, the North Carolina Supreme Court denied the Petitioner relief, but the issue before that court was the Petitioner's failure to survive the standard of plain error review.  Because that court did not provide any reasons for its actions in not disturbing the state court of appeals' decision in light of <u>Smith</u>, this Court must assume that the state supreme court denied review based upon the state court of appeals' plain error analysis, which is consistent with federal law.  <u>See</u> <u>United States v. Olano</u>, 507 U.S. 725, 732-35 (1993) (to establish eligibility for plain-error relief, a defendant must show (i) that there was an error, (ii) that the error was plain, and (iii) that the error affects "substantial rights," i.e., that there is "a reasonable probability that, but for the error, the outcome of the proceeding would have been different").

Since the facts adduced at the Petitioner's trial were undisputed, none of the state courts' adjudications of the Petitioner's claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  Further, and because the state courts' plain error analysis is consistent with the Supreme Court's Olano framework, nothing in the record discloses that any of the North Carolina courts' decisions were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]"  Id., § 2254(d)(1).  As such, the § 2254 petition shall be denied and dismissed.

## V. CONCLUSION

For the reasons stated herein, the § 2254 Petition for Writ of Habeas Corpus [Doc. 1] shall be denied and dismissed as the state appellate court's factual and legal determinations were eminently reasonable. The Petitioner's Motion to Proceed *In Forma Pauperis* [Doc. 5] shall be denied as moot.

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court declines to issue a certificate of appealability. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (noting that, in order to satisfy § 2253(c), a prisoner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims

debatable or wrong); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (holding that, when relief is denied on procedural grounds, a prisoner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

## O R D E R

**IT IS, THEREFORE, ORDERED**:

1.  The Petition for Writ of Habeas Corpus [Doc. 1] is **DENIED and DISMISSED**.

2.  The Petitioner's renewed Motion to Proceed *In Forma Pauperis* [Doc. 5] is **DENIED as moot**.

3.  The Court **DECLINES** to issue a certificate of appealability pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases.

The Clerk of Court is respectfully directed to close this case.

**IT IS SO ORDERED.**

Signed: June 22, 2026

Martin Reidinger
Chief United States District Judge

12